**UNITED STATES of America, Appellant,**

v.

**GILA RIVER PIMA–MARICOPA INDIAN COMMUNITY, Appellees.**

**GILA RIVER PIMA–MARICOPA INDIAN COMMUNITY, Appellants,**

v.

**UNITED STATES of America, Appellee.**

Nos. 21143, 21144.

United States Court of Appeals
Ninth Circuit.

March 6, 1968.

Raymond N. Zagone (argued), Roger P. Marquis, S. Billingsley Hill, Dept. of Justice, Washington, D. C., Edwin L. Weisl, Jr., Asst. Atty. Gen., Edward E. Davis, U. S. Atty., Richard S. Allemann, Asst. U. S. Atty., Phoenix, Ariz., for appellant and cross-appellee.

Z. Simpson Cox (argued), Alfred S. Cox (argued), of Cox & Cox, Phoenix, Ariz., for appellees and cross-appellants.

Before JERTBERG and DUNIWAY, Circuit Judges, and WEIGEL*, District Judge

DUNIWAY, Circuit Judge:

These are appeals by both sides from portions of a single judgment entered in consolidated actions brought by the United States to condemn successive terms of years in certain Indian lands in Arizona. The tract involved embraces approximately 1350 acres and is used by the government as an auxiliary airfield. We state only those facts that relate directly to the claims raised on appeal.

1. *The appeal of the Indians.*

In 1954, the government and the Indians entered into two agreements, called land permits, whereby the government was to have possession and use of the lands through June 30, 1956. Improvements placed on the lands by the government were to remain its property. The

---

* Honorable Stanley A. Weigel, United States District Judge, Northern District of California, sitting by designation.

government was required to restore the lands to their original condition before termination of the permits, or, at its option, to make a cash payment to the Indians in lieu of restoration. Before June 30, 1956, the Indians demanded restoration, but the government did nothing. After that date, the Indians demanded the cash payment. None was made. There is a dispute as to whether the government retained possession after June 30, a dispute that we need not resolve.

On April 23, 1957, the government filed the first of the present condemnation actions. It sought to acquire a term of one year beginning July 1, 1956, with the right to extend it for yearly periods to and including June 30, 1961. It obtained an order for immediate possession effective as of July 1, 1956, and has been in possession ever since. This action was still pending on June 30, 1961. On that day, the second of the present actions was filed, seeking to condemn a further one year term, with the right to similar extensions through June 30, 1966. In their answers, the Indians sought to recover, in addition to the value of the use of their lands for the respective terms, the cash payment promised in the land permits. The court, however, adjudged:

"9. The defendants are entitled to restoration of the premises upon the termination of occupancy by the plaintiff, or money in lieu of restoration. The amount of money in lieu of restoration shall be determined upon termination of the leasehold occupancy by the plaintiff."

It is only from this part of the judgment that the Indians appeal.

The Indians claim that the government, by retaining or retaking possession of the lands and improvements and seeking to condemn a right to their possession and to remove the improvements, has, in substance, condemned their right to cash in lieu of restoration and that they were entitled, when the first condemnation action was filed, to recover that cash payment as part of the damages for the taking. They assert that a contract right is property that can be condemned, citing Long Island Water Supply Co. v. Brooklyn, 1897, 166 U.S. 685, 17 S.Ct. 718, 41 L.Ed. 1165, and Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434.

The difficulty with their position, however, is that nowhere in either complaint did the government seek to condemn the Indians' right to the cash payment. What the government did ask for, in each case, is quoted in the margin.[1] If the Indians, on July 1, 1956, had a right to receive cash in lieu of restoration, that right was not taken.

 What the Indians seek to have the court determine in this action is a contract claim against the government which has not been taken from them. That right cannot be asserted in this action. The amount claimed is in excess of $200,000. Such a claim can only be asserted against the United States in an action under the Tucker Act for breach of contract. Because of the amount involved, exclusive jurisdiction is in the Court of Claims. 28 U.S.C. §§ 1346(a)(2), 1491. Thus the district court lacks jurisdiction to determine their money

---

1. The complaint in the first action alleges:
 "The interest in the property to be acquired is the exclusive use and possession of the land for a term of years beginning July 1, 1956 and ending June 30, 1957, extendible for yearly periods thereafter until June 30, 1961, at the election of the United States * * * together with the right to remove, within a reasonable time after the expiration of said term or any extension thereof, any and all improvements and structures placed thereon by or for the United States * * *."

 The complaint in the second action alleges:
 "The interest in the property to be acquired is for a term of years beginning July 1, 1961 and ending June 30, 1962, extendible for yearly periods thereafter until June 30, 1966, at the election of the United States * * * together with the right to remove, within a reasonable time after the expiration of the term taken or any extension thereof, any and all improvements and structures heretofore, or hereafter placed thereon by or for the United States * * *."

claim against the government. Cf. Rule 71A(e), F.R.Civ.P.; United States v. United States Fidelity & Guaranty Co., 1940, 309 U.S. 506, 60 S.Ct. 653, 84 L. Ed. 894; Nassau Smelting and Refining Works v. United States, 1924, 266 U.S. 101, 106, 45 S.Ct. 25, 69 L.Ed. 190; United States v. Merchants Transfer & Storage Co., 9 Cir., 1944, 144 F.2d 324, 327.

■ It does not follow that paragraph 9 of the judgment is erroneous. As we read it, it does not purport to deal with the Indians' contract claim. Rather it reserves to the end of the last term condemned the fixing of damages, if any, arising from the taking of the right to remove structures and improvements placed upon the land by the United States. It is not certain when that time will come; there may be condemnation of further terms of years, including the same rights. Deferring the fixing of these damages under these circumstances seems to us to be sensible and permissible. United States v. Westinghouse Elec. & Mfg. Co., 1950, 339 U.S. 261, 267, 70 S.Ct. 644, 94 L.Ed. 816. When the government's right of occupancy ends, the court can interpret its judgment[2] as to whether it gives the United States the right to remove improvements placed by it upon the land before July 1, 1956 or only those placed upon the land thereafter,[3] and can fix damages accordingly.

## 2. The appeal of the government.

The only error asserted by the government is the award of attorney fees to the Indians. Before the trial of the actions, the Indians requested that the United States Attorney represent them, relying on 25 U.S.C. § 175, which reads:

> "In all States and Territories where there are reservations or allotted Indians the United States attorney shall represent them in all suits at law and in equity."

The request was denied because the United States Attorney was representing the government as plaintiff. The Indians retained counsel, on a contingent fee basis, under a contract approved by the authorized representative of the Secretary of the Interior and by the court. See 25 U.S.C. §§ 81, 82. They asserted that their fees should be paid by the government and the court agreed. The judgment so provides.

■ With regret, we conclude that this was error. We have held that the statute (section 175) is not mandatory. Siniscal v. United States, 9 Cir., 1953, 208 F.2d 406. See also Lyngstad v. Roy, N.D., 1961, 111 N.W.2d 699. There is some legislative history indicating that the statute was meant to apply only to disputes relating to public lands. As to this question, see "Federal Indian Law," p. 304, Dept. of Interior (1966); 25 Decisions of Department of Interior 426, 428 (1897). We need not so decide, however. It is clear that the United States Attorney could not properly represent both sides in these cases. The Congress seems to have been aware of the possibility of conflict of interest. See Cong.Rec., 52d Cong. 2d Sess., Feb. 24, 1893, p. 2132. And Congress has made express provision for the retainer of private counsel, with the approval of the Secretary of the Interior, on claims

---

2. The judgment awards to the government, in each case, "the estate set forth and the premises described in the declaration of taking and complaint in condemnation filed in said cause."

3. This issue is raised because of the language of the condemnation complaints, supra, n. 1. The first complaint reserves the right to remove all improvements on the land "placed thereon" by the United States. This can be read as giving the United States the right to remove only those improvements placed on the land during the condemned term and not those placed prior to July 1, 1956. The second complaint condemns the right to remove all improvements "heretofore or hereafter placed thereon" by the United States. The "heretofore" could be deemed to carry forward the rights taken under the first complaint. It could also be argued that the government obtained the right, at the end of the last term taken, to remove all improvements placed on the land at any time. We do not now decide this question.

against the United States. 25 U.S.C. §§ 81, 81a, 81b. Yet these sections impose no liability for attorney fees upon the government. Section 175 does not do so either. We do not think that the courts can do so. Unless expressly provided for by statute, attorney fees cannot be awarded against the government. See Dohany v. Rogers, 1930, 281 U.S. 362, 368, 50 S.Ct. 299, 74 L.Ed. 904; cf. United States v. Worley, 1930, 281 U.S. 339, 344, 50 S.Ct. 291, 74 L.Ed. 887 (costs); United States v. Chemical Foundation, 1926, 272 U.S. 1, 20–21, 47 S.Ct. 1, 71 L.Ed. 131 (costs); United States v. Knowles' Estate, 9 Cir., 1932, 58 F.2d 718 (costs).

Insofar as it awards attorney fees against the United States, the judgment is reversed. The matter is remanded to the trial court with directions to amend its judgment accordingly. In other respects the judgment is affirmed.