**GILA RIVER INDIAN COMMUNITY,**
**Plaintiff-Appellant,**

v.

**HENNINGSON, DURHAM & RICHARD-SON, a Nebraska Corporation, and Ranier Construction Company, Inc., an Arizona Corporation, Defendants-Appellees.**

No. 78–1483.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 15, 1980.

Decided Aug. 29, 1980.

Z. Simpson Cox, Cox & Cox, Phoenix, Ariz., for plaintiff-appellant.

Neil Vincent Wake, Phoenix, Ariz., argued, for defendants-appellees; Riney B. Salmon, II, Jennings, Strouss & Salmon, Phoenix, Ariz., on brief.

Before HUG and ALARCON, Circuit Judges, and BLUMENFELD *, District Judge.

HUG, Circuit Judge:

This is an action brought by the Gila River Indian Community against an architectural firm and a building contractor for damages for the negligent design and construction of a Youth Center on the Gila River Indian Reservation. The district court dismissed for lack of jurisdiction. Appellant contends that jurisdiction exists under 28 U.S.C. §§ 1331 and 1362.[1] The major issue on this appeal is the extent of the jurisdiction afforded by section 1362.

In 1966, Congress enacted 28 U.S.C. § 1362 which provides for district court jurisdiction over suits brought by Indian tribes or bands:

The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

In this appeal we are faced with the question of whether Congress intended federal jurisdiction in such suits to be broader than that of the jurisdiction of the district courts in suits brought under the general federal question jurisdiction statute, 28 U.S.C. § 1331,[2] and if so, whether such jurisdiction extends to this type of case. Appellant contends that the district court erred in concluding that jurisdiction under section 1362 does not extend to the facts of the present case. We affirm.

I

The appellant, the Gila River Indian Community ("Tribe"), is composed of the confederated Pima and Maricopa tribes of Indians. The Tribe was organized pursuant to 25 U.S.C. § 476. The Secretary of the Interior approved the constitution and by-laws of the Tribe on May 14, 1936.[3] Fee title to the land on the Gila River Indian Reservation ("Reservation") is held by the United States in trust for the Tribe. The present action was commenced at the direction of the Gila River Indian Community Council, the Tribe's governing body.

The complaint alleges that the appellees, Henningson, Durham, & Richardson, Inc. ("Henningson"), an architectural and engineering firm, and Ranier Construction Company, Inc. ("Ranier"), a contracting firm, improperly designed and constructed a Youth Center located on the Reservation at Sacaton, Arizona. The Youth Center was completed in 1969. The complaint alleges that in 1973 the Youth Center began to break up and come apart to the point that the Tribe was forced to abandon the building. The alleged causes of the defects of the Youth Center are: the negligence of Henningson in its faulty design of the building, its failure to specify the proper manner of, and materials to be used in, the construction, and its inadequate supervision and inspection during construction; and the negligence of Ranier in construction of the building.

The district court dismissed without prejudice the action against both Henningson and Ranier, holding that the complaint pleaded a cause of action for breach of

---

* Honorable M. Joseph Blumenfeld, Senior United States District Judge for the District of Connecticut, sitting by designation.

1. Jurisdiction was also asserted in the trial court under section 1332, which provides for jurisdiction in cases of diversity of citizenship. The district court determined that the prerequisites for obtaining jurisdiction by virtue of diversity of citizenship had not been met. The Tribe has not appealed this portion of the ruling, and thus that issue is not before us.

2. In pertinent part, 28 U.S.C. § 1331 provides:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States. . .

3. Subsequent amendments to the Constitution and bylaws were approved by the Secretary of the Interior on March 17, 1960, and January 28, 1974.

contract arising solely under state law. It was the conclusion of the district court that jurisdiction could not exist under section 1331, and that Congress did not intend to extend the jurisdictional reach of section 1362 to the facts of the present case.

The Tribe filed a motion for rehearing and a motion for leave to file an amended complaint. The district court denied both these motions, stating that the allegations contained in the amended complaint raised no new relevant issues nor did they cure the jurisdictional defects of the original complaint. The Tribe appeals from the original order of dismissal and the order denying the motions for reconsideration and to amend.[4]

The Tribe contends that the language "arises under the Constitution, laws, or treaties of the United States" in section 1362 extends to all suits in which the United States could have represented an Indian tribe under 25 U.S.C. § 175.[5] In the alternative, the Tribe contends that the present action should be governed by federal common law, thus fulfilling the "arising under" requirement.

## II

Congress used identical "arising under" language in sections 1331 and 1362, the difference being that section 1362 does not contain the $10,000 jurisdictional amount requirement. Appellees argue that Congress intended the jurisdictional amount requirement to be the only difference between the two statutes, and that section 1362 still requires a case to come within the "arising under" doctrine.

The plain meaning of the language used by Congress in section 1362 would tend to support appellees' position. This court has recently examined overreliance on the "plain meaning" rule, however. *See Church of Scientology v. United States Department of Justice,* 612 F.2d 417, 420–22 (9th Cir. 1979). Resort to legislative history is not inappropriate where application of the "plain meaning" rule would lead to an unreasonable result "plainly at variance with the policy of the legislation as a whole." *Id.* at 422, *quoting United States v. American Trucking Associations,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940), *quoting Ozawa v. United States,* 260 U.S. 178, 194, 43 S.Ct. 65, 67, 67 L.Ed. 199 (1922). In the present case resort to the legislative history is appropriate because of the strong federal interest in the protection of Indians, *see Moses v. Kinnear,* 490 F.2d 21, 25 (9th Cir. 1974), and because of what may be interpreted as indications in case law of this circuit and the Supreme Court that section 1362 may have a broader jurisdictional reach than section 1331.

There is language in the legislative history that elimination of the $10,000 amount requirement was intended to be the only difference between the two sections.

The House Report states:

The purpose of the proposed legislation is to provide that the district courts are to have original jurisdiction of all civil actions brought by Indian tribes or bands wherein the matter in controversy *arises under the Constitution, laws, or treaties of the United States. These civil actions would therefore be permitted without regard to the $10,000 jurisdictional amount* provided in section 1331(a) of title 28, when brought by an Indian tribe or band under the authority of the new section added by the bill.

. . . . .

---

4. The district court's original order dismissed both the complaint and the action without prejudice. The order denying the Tribe's subsequent motions for reconsideration and for leave to amend did not indicate that further amendments would be disallowed. However, the two orders make clear that the district court determined that the Tribe would be unable to amend its complaint so as to properly invoke subject matter jurisdiction; thus, they are final and appealable orders. *See Blevins v. Ford,* 572 F.2d 1336, 1338 (9th Cir. 1978).

5. 25 U.S.C. § 175 provides:

In all States and Territories where there are reservations or allotted Indians the United States attorney shall represent them in all suits at law and in equity.

This court has held that this section is discretionary, not mandatory. *See United States v. Gila River Pima-Maricopa Indian Community,* 391 F.2d 53, 56 (9th Cir. 1968); *Siniscal v. United States,* 208 F.2d 406, 410 (9th Cir. 1953).

By adding a new section 1362 to chapter 85 of title 28 of the United States Code, the bill would add language to that title making it possible for an Indian tribe or band having a governing body recognized by the Secretary of the Interior to bring actions in a district court *where the matter in controversy arises under the Constitution, laws, or treaties of the United States.* In providing for original jurisdiction of all civil actions of this type, *the bill has the effect of removing the $10,000 jurisdictional requirement* which presently applies as to such actions by reason of the provisions of section 1331 of the same chapter of title 28. The district courts now have jurisdiction over *cases presenting Federal questions* brought by the tribes when the amount in dispute exceeds $10,000. *Enactment of this bill would merely authorize the additional jurisdiction of the court over those cases where the tribes are not able to establish that the amount in controversy exceeds that amount.* In its report to the Senate Committee, the Department of the Interior specifically pointed out that the *issues involved in cases involving tribal lands that either are held in trust or were so held by the United States or are held by the tribe subject to restriction against alienation imposed by the United States are Federal issues.* The Department therefore observed that particularly as to this class of cases it is appropriate that the actions be brought in a U.S. district court. In its statement to the Senate committee, that Department referred to the unique governmental status of Indian tribes and the unique relationship which exists between them and the Federal Government. This is a relationship often affected by treaties and the Department of the Interior indicated that a tribe's desire to have a Federal forum for matters based upon Federal questions is justified.

. . . . .

In his statement before the Senate committee, the representative of the Department of Interior stated that it was the Department's view that the creation of the jurisdiction contemplated by the bill will not add appreciably to the burdens of the Federal courts. As has been noted, these courts now entertain cases brought by the Federal Government to vindicate tribal rights without regard to the amount in controversy. Further, they now entertain cases *presenting Federal questions* brought by the tribes when the amount in dispute exceeds $10,000. This bill would therefore authorize the addition of only those cases, which the Justice Department stated would probably not be large in number, where the tribes have not been able to show that the amount in controversy exceeds $10,-000, and the Government for some reason does not want to prosecute the case in behalf of the tribe. The Judicial Conference in commenting on this type of case has stated that the jurisdiction contemplated by the bill would present no difficulty of judicial administration.

H.R.Rep.No.2040, 89th Cong., 2nd Sess., *reprinted in* [1966] U.S.Code Cong. & Ad. News 3145–47 (emphasis added). The Tribe points to language in the legislative history that the Tribe claims indicates that suits may be brought under section 1362 whenever the United States attorney declines to take action under 25 U.S.C. § 175:

The committee feels that there is another factor which is relevant in this situation and serves to emphasize the justification for enactment of this bill. *The United States as trustee can initiate litigation involving issues identical to those which would be presented in cases brought under the new section. The enactment of this bill would provide for U.S. district court jurisdiction in those cases where the U.S. attorney declines to bring an action and the tribe elects to bring the action.* As is observed in the Department of the Interior report, the tribes would then have access to the Federal courts through their own attorneys. It can therefore be seen that the bill provides the means whereby the tribes are assured of the same judicial determination whether the action is brought in

their behalf by the Government or by their own attorneys. There is a large body of Federal law which states the relationship, obligations and duties which exists between the United States and the Indian tribes. The Federal forum is therefore appropriate for litigation involving such issues.

*Id.* (emphasis added). There is no doubt, as the legislative report states, that the United States as trustee can initiate litigation identical to cases brought under section 1362. The Tribe's illation that the obverse is true, that an Indian tribe may bring any action not brought by the United States, does not necessarily follow, however. The key phrase is "cases brought under the new section." The earlier language of the report indicates that the jurisdiction in the new section still extends only to cases arising under the Constitution, laws, or treaties of the United States and that only the $10,000 requirement was being removed.

Cases interpreting section 1362 have been less than clear as to how far its jurisdictional reach extends. In reviewing these cases we bear in mind that statutes passed for the benefit of Indian tribes, such as section 1362, are to be liberally construed, with doubtful expressions being resolved in the Indians' favor. *See McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 174, 93 S.Ct. 1257, 1263, 36 L.Ed.2d 129 (1973); *Navajo Tribal Utility Authority v. Arizona Department of Revenue,* 608 F.2d 1228, 1233 (9th Cir. 1979).

The Supreme Court has on two recent occasions considered the jurisdiction of the federal courts over cases brought by Indian tribes. In *Oneida Indian Nation v. County of Oneida,* 464 F.2d 916 (2nd Cir. 1972) ("Oneida I"), the Second Circuit concluded that a claim by an Indian tribe that the defendants were in unlawful possession of Indian lands was an action in ejectment which presented no federal question under section 1331. The Second Circuit also rejected the argument urged in the present case, stating that "the sole purpose of § 1362 was to remove any requirement of a jurisdictional amount," despite the fact the

suit could not have been brought in the state courts. *Id.* at 919 n.4. A vigorous dissent was written by Judge Lumbard, who believed that the legislative history of section 1362 showed that Congress intended the tribes to have an available forum when the Government declined to represent them. *Id.* at 924. In light of the broader interpretation he would have given section 1362, Judge Lumbard would have afforded the Indians the right to have the dispute determined in federal court.

The Supreme Court reversed the Second Circuit on the ground that the complaint stated a cause of action under section 1331, as well as under section 1362. *See Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974) ("Oneida II"). In doing so the Court specifically declined to decide whether Congress intended to broaden the "arising under" language in enacting section 1362, in addition to eliminating the jurisdictional amount requirement. *Id.* at 682 n.16, 94 S.Ct. at 784. The Court stated that tribal rights to Indian lands are an exclusive province of federal law and the right to possession was based on assertion of such federal law. *Id.* at 666–67, 94 S.Ct. at 776–777. The Court held that federal law protects the Indians' possessory right to tribal lands wholly apart from state law principles which separately protect the right of possession, and thus the complaint arose under federal law within the meaning of both sections. *Id.* at 677, 94 S.Ct. at 782.

The second case in which the interpretation of section 1362 was addressed by the Court was *Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). In *Moe* the Court was faced with the question whether Indians claiming immunity from state taxes could seek an injunction against the state in light of 28 U.S.C. § 1341, which prohibits the district courts from enjoining state tax collection where there is a speedy remedy available in the state courts, unless the plaintiff is the United States. The Court first considered the interpretation of section 1362:

Looking to the legislative history of § 1362 for whatever light it may shed on the question, we find an indication of a congressional purpose to open the federal courts to the kind of claims that could have been brought by the United States as trustee, but for whatever reason were not so brought. Section 1362 is characterized by the reporting House Judiciary Committee as providing "the means whereby the tribes are assured of the same judicial determination whether the action is brought in their behalf by the Government or by their own attorneys." While this is hardly an unequivocal statement of intent to allow such litigation to proceed irrespective of other explicit jurisdictional limitations, such as § 1341, it would appear that Congress contemplated that a tribe's access to federal court to *litigate a matter arising "under the Constitution, laws, or treaties"* would be at least in some respects as broad as that of the United States suing as the tribe's trustee.

*Id.* at 472–73, 96 S.Ct. at 1641 (emphasis added) (footnote omitted). This excerpt specifically refers to the "arising under" requirement with respect to a tribe's access to federal court under section 1362. The Court went on to conclude that because the United States was not barred from seeking an injunction by section 1341, and the United States could have sued in behalf of the Indians,[6] the Indians were likewise free to proceed:

We think that the legislative history of § 1362, though by no means dispositive, suggests that in certain respects tribes suing under this section were to be accorded treatment similar to that of the United States had it sued on their behalf.

*Id.* at 474, 96 S.Ct. at 1641. This statement, while removing jurisdictional impediments such as section 1341, does not go so far as to remove the "arising under" requirement of section 1362.

This court, in an action to quiet title to Indian lands, found it doubtful that the requirements of section 1331 could be met, whether the action was styled as one to quiet title or one of ejectment. *See Fort Mojave Tribe v. Lafollette*, 478 F.2d 1016, 1018 (9th Cir. 1973). We did, in that opinion, agree with the dissenting opinion of Judge Lumbard in *Oneida I* that "Congress intended by § 1362 to authorize an Indian tribe to bring suit in federal court *to protect its federally derived property rights* in those situations where the United States declines to act." *Id.* at 1018 (emphasis added). The decision was issued before the Supreme Court's decision in *Oneida II*, which would have allowed jurisdiction under section 1331 in *Fort Mojave*, thus rendering questionable any reliance on this court's language in *Fort Mojave* that extended jurisdiction under section 1362 beyond that of section 1331. Our concern that a federal forum should be provided for disputes involving Indian lands was the determinative factor of our interpretation of section 1362 in *Fort Mojave*. This concern was alleviated by the decision in *Oneida II*, which held that jurisdiction existed under both section 1331 and section 1362.

In two cases decided by the Tenth Circuit after *Oneida II*, that court has not had to reach the issue whether section 1362 extends beyond section 1331, because the court found both cases controlled by *Oneida II*. In *Mescalero Apache Tribe v. Burgett Floral Co.*, 503 F.2d 336 (10th Cir. 1974), the court found a claim of trespass and destruction of trees on the reservation raised the issue of protection of the tribe's possessory rights. Likewise, in *Pueblo of Isleta v. Universal Constructors, Inc.*, 570 F.2d 300 (10th Cir. 1978), the court held a claim of damages to houses on the reservation from blasting activities carried on outside the reservation involved the possessory rights of the tribal lands.

---

**6.** The Court did not rely on 25 U.S.C. § 175 as authority for the ability of the United States to bring the action. Instead the court relied on *Heckman v. United States*, 224 U.S. 413, 32 S.Ct. 424, 56 L.Ed. 820 (1912) and *United States v. Rickert*, 188 U.S. 432, 23 S.Ct. 478, 47

L.Ed. 532 (1903), which established the interest of the United States in "securing immunity to the Indians from taxation conflicting with the measures it had adopted for their protection." *Heckman*, 224 U.S. at 441, 32 S.Ct. at 433.

A district court decision relied upon heavily by the Tribe concerned a trespass claim by an Indian Tribe against persons who had allegedly been issued permits by the United States to enter on the reservation. *See Salt River Pima-Maricopa Indian Community v. Arizona Sand and Rock Co.*, 353 F.Supp. 1098 (D.Ariz.1972). *Salt River* is the only case where a court has directly held that Congress intended to assure the tribe of the same judicial determination whenever the Government chooses not to sue under 25 U.S.C. § 175, and that under section 1362 any case which might have been brought by the United States satisfies the "arising under" requirement if brought by a tribe. Again, however, *Salt River* represents a case which would come within section 1331 after *Oneida II*, and its value as precedent is therefore weakened.

■ The common thread running through these cases which would extend the jurisdictional reach of section 1362 is that they all involved possessory rights of the tribes to tribal lands. That such rights were granted and governed by federal treaties and laws was the basis for the Court's holding in *Oneida II*. We do not find the implication of such rights in the present case, nor do we find congressional intent to extend section 1362 to the facts of the present case.

There is nothing in the present case which suggests that the action is anything more than a simple breach of contract case. The dispute concerns adequacy of performance in planning and constructing the Youth Center. The Tribe's possessory right to the land or any rights granted under any federal treaty or statute are not at issue. The Tribe does not seek recovery for damages to Indian land, but rather seeks recovery of damages for failure to perform a construction contract.

We find support for our decision in *Mescalero Apache Tribe v. Martinez*, 519 F.2d 479 (10th Cir. 1975). That case, decided

after *Oneida II*, involved a breach of contract action for failure to construct trailer campsites on a reservation. The court held that jurisdiction under section 1362 does not extend to such an action. In light of *Oneida II* this view is not inconsistent with *Fort Mojave* which found that the federal jurisdiction exists for actions involving property rights to Indian lands.

■ We find inadequate support for the contention that Congress intended to provide jurisdiction for a tribe to bring an action under section 1362 in every instance where the United States can bring an action on behalf of the Tribe under 25 U.S.C. § 175. Congress used "arising under" language in section 1362 that is identical to that contained in section 1331. Congress could easily have provided that Indian tribes could bring under section 1362 any action which the United States could bring under section 175, but Congress did not do so.

### III

The Tribe argues that jurisdiction should exist under sections 1331 and 1362 because actions involving Indian contracts should be controlled by federal common law. This argument is based upon 25 U.S.C. §§ 81–85, which deal with "Contracts with Indians." The Tribe contends that these sections demonstrate the intention of the federal government to foster and encourage federal policies and federal protection with respect to Indian contracts, which should be governed by federal common law.[7]

■ It is true that the "arising under" requirement of section 1331 may be met by "claims founded upon federal common law as well as those of a statutory origin." *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972). However, we can discern no reason in the present case to extend the reach of the federal common law to cover all con-

---

7. Section 81 requires approval of the Secretary of the Interior of certain contracts. Section 82 provides procedures for payment under such contracts, and section 84 sets restrictions on

assignment of such contracts. The Tribe does not contend that its dispute with the appellees is governed by any of these sections.

tracts entered into by Indian tribes. Otherwise the federal courts might become a small claims court for all such disputes.

The rights of the Tribe in its relationship with the federal government is not at issue in this case. *Contrast White v. Matthews*, 420 F.Supp. 882, 887–88 (D.S.D.1976) (duty of federal officials to provide mental health care to Indians on a reservation). The substance of this controversy centers upon the contract and its construction. *See Littell v. Nakai*, 344 F.2d 486, 488 (9th Cir. 1965), *cert. denied*, 382 U.S. 986, 86 S.Ct. 531, 15 L.Ed.2d 474 (1966); *Mescalero Apache Tribe v. Martinez*, 519 F.2d at 481. We are thus not concerned with the strong interest in tribal rights to Indian lands reflected in *Moe* and *Oneida II.*

We see no reason why commercial agreements between tribes and private citizens cannot be adequately protected by well-developed state contract laws. Nor has the tribe pointed out why national uniformity of rules governing these transactions would be desirable. *See Wilson v. Omaha Indiana Tribe*, 442 U.S. 653, 673, 99 S.Ct. 2529, 2540, 61 L.Ed.2d 153 (1979); *Pankow Construction Co. v. Advance Mortgage Corp.*, 618 F.2d 611 (9th Cir. 1980); *Ashland Oil, Inc. v. Phillips Petroleum Co.*, 554 F.2d 381, 390–91 (10th Cir.), *cert. denied*, 434 U.S. 921, 98 S.Ct. 396, 54 L.Ed.2d 278 (1977). Adoption of state law in such cases does not present a conflict with the federal policy or interest in protection of Indian tribes. Nor has any other court perceived the need for federal common law rules governing contract disputes between Indian tribes and non-Indians. The absence of the United States as a party to the litigation is also a factor in determining the need for a federal common law rule. *See Pankow Construction Co. v. Advance Mortgage Corp.*, 618 F.2d at 614 n.7. *Cf. Ashland Oil, Inc. v. Phillips Petroleum Co.*, 554 F.2d at 390 (fact that Government entered litigation casts action in a different light). In light of these consider-

ations, we decline to embark upon the course the Tribe suggests.[8]

## IV

We decline to extend the reach of section 1362 or the federal common law to the facts of the present case. The judgment of the district court is AFFIRMED.

---

**8.** We also reject the Tribe's attempt to style the action as an action for damage to the Tribe's land. It is clear that the Tribe's claim rests upon the failure to perform contractual obligations. The damages sought were not for trespass on the land, for restoration of the land to its original state or for irreparable injury to the land, but rather for replacement of the building and for loss of use of the building because of defective design and construction.