NIAGARA MOHAWK POWER CORPORATION, Plaintiff,

v.

TONAWANDA BAND OF SENECA INDIANS, et al., Defendants.

No. 93–CV–192A.

United States District Court, W.D. New York.

Aug. 3, 1994.

Mark R. McNamara, Hiscock & Barclay, Buffalo, NY, for plaintiff.

Harold M. Halpern, Borins, Halpern & Stromberg, Buffalo, NY, for moving defendants.

Joseph E. Zdarsky, Zdarsky, Sawicki & Agostinelli, Buffalo, NY, for non-moving defendants.

Timothy J. Toohey, Toohey & Dowd, P.C., Lewiston, NY, for proposed intervenor.

## DECISION AND ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Carol E. Heckman, pursuant to 28 U.S.C. § 636(b)(1), on May 12, 1993. On August 2, 1993, defendants Tonawanda Band of Seneca Indians, Bernard Parker, Darwin Hill, Kervin Jonathan, James Logan, Emerson Webster, Darren Jimerson, Harley Gordon and Frank Abrams ("moving defendants") filed a motion for summary judgment dismissing the action for lack of subject matter jurisdiction based on sovereign immunity pursuant to Fed.R.Civ.P. 56, and for failure to join an indispensable party pursuant to Fed.R.Civ.P. 19. Neville Spring moved to intervene, pursuant to Fed.R.Civ.P. 24, on August 11, 1993.

On November 22, 1993, Magistrate Judge Heckman filed a Report and Recommendation recommending that the moving defendants' motion for summary judgment be granted, that the motion to intervene be denied, and that the action be dismissed for lack of federal question jurisdiction, or in the alternative, for lack of subject matter jurisdiction based on sovereign immunity and for failure to join an indispensable party, pursuant to Fed.R.Civ.P. 19.

Objections to Magistrate Judge Heckman's Report and Recommendation were filed by plaintiff on December 15, 1993.[1] Defendants

---

1. In its objection to the Report and Recommendation, plaintiff requests that this Court consoli-

Lone Goeman, Susan LaFromboise, David C. Peters, Peter L. Poodry and John A. Redeye ("non-moving defendants") filed objections to the Report and Recommendation on December 15, 1993.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation, the Court denies the motion to intervene filed by Neville Spring, grants the moving defendants' motion for summary judgment, and dismisses the action for lack of federal question jurisdiction, and in the alternative, for lack of subject matter jurisdiction based on foreign immunity, and for failure to join an indispensable party pursuant to Fed.R.Civ.P. 19.[2]

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

This case has been referred to the undersigned by Hon. Richard J. Arcara pursuant to 28 U.S.C. § 636(b) for all pretrial matters, and to hear and report on dispositive motions. Defendants Tonawanda Band of Seneca Indians ["Tonawanda Band"], Bernard Parker, Darwin Hill, Kervin Jonathan, James Logan, Emerson Webster, Darren Jimerson, Harley Gordon and Frank Abrams [the "moving Defendants"] have moved for summary judgment pursuant to Fed.R.Civ.P. 56

date the instant action with the following actions: *Goeman v. Tonawanda Bank of Seneca Indians, et al.,* 92–CV–742A; *LaFromboise v. Tonawanda Band of Seneca Indians, et al.,* 92–CV–740A; *Peters v. Tonawanda Band of Seneca Indians, et al.,* 92–CV–739A; *Poodry v. Tonawanda Band of Seneca Indians, et al.,* 92–CV–738A; and *Redeye v. Tonawanda Band of Seneca Indians, et al.,* 92–CV–741A ("Indian Civil Rights Actions"). Because this Court is adopting the proposed findings of the Report and Recommendation, the Court denies plaintiff's request to consolidate.

dismissing the complaint, and Neville Spring has moved to intervene in this action pursuant to Fed.R.Civ.P. 24.

For the following reasons, it is recommended that the motion for summary judgment be granted, and the motion to intervene be denied.

## BACKGROUND

On March 3, 1993, plaintiff Niagara Mohawk Power Corporation ["Niagara Mohawk"] filed this action seeking a declaratory judgment as to its rights and obligations under a franchise agreement entered into on April 27, 1936 between the Tonawanda Nation of Seneca Indians ["Tonawanda Nation"] and the Niagara, Lockport & Ontario Power Company ["Niagara Lockport"], Plaintiff's predecessor in interest. Plaintiff asserts federal question jurisdiction under 28 U.S.C. § 1331.

On April 20, 1993, the moving Defendants answered the complaint, denying Plaintiff's jurisdictional allegations and asserting several affirmative defenses, including sovereign immunity (Item 9). Defendants Stonehorse Lone Goeman, Susan LaFromboise, David C. Peters, Peter L. Poodry and John A. Redeye [the "non-moving Defendants"] answered the complaint on May 5, 1993, asserting a counterclaim for breach of the franchise agreement, as well as for breach of obligations under unspecified provisions of the New York Public Service Law, based on Plaintiff's failure to provide them with electrical service (Item 10).[1]

Under the 1936 franchise agreement, the Tonawanda Nation granted Niagara Lockport a "right, privilege and easement" to construct, operate and maintain an electrical power distribution facility on Tonawanda Na-

**2.** Dismissing this action pursuant to Fed.R.Civ.P. 19 results in the dismissal of the counterclaims asserted by the non-moving defendants.

**1.** Named Defendant Roy Poodry has not answered, moved or otherwise appeared in this action except by way of an affidavit attached to Plaintiff's counsel's Affirmation in Opposition to Defendants' Motion for Summary Judgment (Item 22).

tion Reservation land (Item 1, Exh. 2). Pursuant to New York State law, and after public hearing, the franchise was ratified by the state Public Service Commission and the courts of Erie, Niagara and Genesee Counties. Upon inquiry, counsel for the Tonawanda Nation was advised that ratification by the federal or state governments was not required (Item 1, Exh. 1, pp. 13–17). The distribution facility was constructed, necessary lines and equipment were installed, and electricity was distributed to reservation users pursuant to the franchise.

According to the complaint, beginning in late 1992, Plaintiff received requests from the non-moving defendants,[2] among others, to supply them with electrical power on reservation lands. At approximately the same time, the Tonawanda Band directed Niagara Mohawk not to provide electrical power to these applicants without prior approval of the tribal Council of Chiefs (see Item 1, Exhs. 5 & 6). Plaintiff claims that this action by the Tonawanda Band, as well as the threat of legal action against Plaintiff by the non-moving Defendants relative to their applications for electrical service, have raised questions about the obligations of the parties to the franchise agreement, which this court has the power to determine in this suit for declaratory relief.

In their motion for summary judgment, the moving Defendants assert that sovereign immunity precludes this suit against the Tonawanda Band, that the Tonawanda Band is an indispensable party to a suit against the non-moving Defendants, and that in any event there is no federal question jurisdiction over this contract dispute. According to the moving Defendants, since there is no jurisdictional basis for the action, there is no basis for Neville Spring's motion to intervene.

Plaintiff argues that neither the Tonawanda Band nor the individual members of the Council of Chiefs can assert sovereign immunity in this action. According to Plaintiff, the Tonawanda Band waived its immunity when it appeared before the state Public Service Commission and three county courts during franchise approval proceedings in 1936, and the individual council members cannot claim immunity since they acted *ultra vires*, or outside their authority under the laws of the tribe, when they banished the non-moving Defendants and asserted the right of prior approval under the franchise agreement. Plaintiffs also contend that even if sovereign immunity precludes this suit against the Tonawanda Band and the council members, it should continue with regard to the non-moving Defendants since the tribe and the council are not indispensable parties to those Defendants' counterclaim against Plaintiff for provision of electrical service.

### DISCUSSION

#### 1. Federal Question Jurisdiction.

The sole jurisdictional statute set forth in the complaint is 28 U.S.C. § 1331, which states "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." An action "arises under" federal law if that law creates the claim, *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916), or if a substantial question of federal law is a necessary element of the plaintiff's cause of action. *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199–202, 41 S.Ct. 243, 244–246, 65 L.Ed. 577 (1921). Thus, "[f]ederal question jurisdiction may be properly invoked only if the plaintiff's complaint necessarily draws into question the interpretation or application of federal law ...," *State of New York v. White*, 528 F.2d 336, 338 (2d Cir.1975), or reveals a "dispute or controversy respecting the validity, construction or effect of such a law, upon the

---

**2.** In January and February, 1992, each of these individual Defendants was banished forever from Tonawanda Band territory by the Council of Chiefs. *See* Item 22, Exh. B. Each has filed suit in federal district court challenging his or her banishments, and challenging the tribal authority of the Council of Chiefs. *See Goeman v. Tonawanda Band of Seneca Indians, et al.*, 92–CV– 742A; *LaFromboise v. Tonawanda Band of Seneca Indians, et al.*, 92–CV–740A; *Peters v. Tonawanda Band of Seneca Indians, et al.*, 92–CV– 739A; *Poodry v. Tonawanda Band of Seneca Indians, et al.*, 92–CV–738A; and *Redeye v. Tonawanda Band of Seneca Indians, et al.*, 92–CV–741A. These suits are pending as of the date of this Report and Recommendation.

determination of which the result depends." *Shulthis v. McDougal*, 225 U.S. 561, 569, 32 S.Ct. 704, 706, 56 L.Ed. 1205 (1912) (quoted in *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 677, 94 S.Ct. 772, 782, 39 L.Ed.2d 73 (1974)).

 As stated by the Supreme Court:

Whether a case is one arising under [federal law], in the sense of the jurisdictional statute, . . . must be determined from what necessarily appears in the plaintiff's statement of his own claim . . ., unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.

*Taylor v. Anderson*, 234 U.S. 74, 75–76, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914) (quoted in *Oklahoma Tax Commission v. Graham*, 489 U.S. 838, 840–41, 109 S.Ct. 1519, 1520–21, 103 L.Ed.2d 924 (1989)); *see also West 14th Street Commercial Corp. v. 5 West 14th Owners Corp.*, 815 F.2d 188, 194 (2d Cir.), *cert. denied*, 484 U.S. 850, 108 S.Ct. 151, 98 L.Ed.2d 107 (1987). Under this "well-pleaded complaint" rule, the existence of a federal defense, such as an Indian tribe's sovereign immunity, "does not convert a suit otherwise arising under state law into one which, in the statutory sense, arises under federal law." *Graham, supra* 489 U.S. at 841, 109 S.Ct. at 1521 (citing *Gully v. First National Bank*, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). Furthermore:

To determine whether a well-pleaded declaratory judgment complaint arises under federal law, a court must look beyond the fact allegations and, by identifying the substantive theories upon which plaintiff could have brought its action, determine whether there necessarily would be federal jurisdiction in a suit for coercive relief brought either by the declaratory defendant or the declaratory plaintiff, apart from any anticipated defenses.

*J.A. Jones Const. Co. v. City of New York*, 753 F.Supp. 497, 500 (S.D.N.Y.1990).

 Applying the well-pleaded complaint rule, the complaint fails to state a claim arising under federal law. Plaintiff claims the right and obligation under the franchise agreement to provide power to all qualified applicants on reservation land, as it has done since 1936, without the approval of the Council of Chiefs. The claim is one of contractual interpretation which does not raise federal question jurisdiction.

The counterclaim asserted by the non-moving defendants likewise is based exclusively on the franchise agreement.[3] The non-moving Defendants' allege in their counterclaim that Niagara Mohawk's refusal to provide them with electrical service constitutes a breach of its obligations under the franchise agreement and under the state Public Service Law.

In sum, the only substantive theories presented by the claims and counterclaims relate to the parties' differing interpretation of the language in the franchise agreement. No federal cause of action has been pleaded, or even suggested.

 The claims based on the franchise agreement are not converted to federal claims merely because one of the parties to the agreement is an Indian tribe. While it is true that the "arising under" requirement of § 1331 may be met by "claims founded upon federal common law as well as those of a statutory origin," *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972), courts considering the matter have refused to extend the reach of the federal common law to cover all contract actions between Indian tribes and non-Indians. *See, e.g., Gila River Indian Community v. Henningson, Durham & Richardson*, 626 F.2d 708, 714–15 (9th Cir.1980); *Littell v. Nakai*, 344 F.2d 486 (9th Cir.1965). In this case, as in *Gila River, supra*, the controversy

---

3. The non-moving Defendants rely on the following language in the franchise agreement:

. . . the said electric lines with appurtenances thereto may be constructed and maintained upon the public roads, highways and streets within the said reservation in front of allotted lands only in case the record owners of the said allotted lands shall give consent and approval thereto, except that in the event of the refusal of the owners of the said allotted lands to give such consent, then the [power company] may proceed as provided in Section 90 of the Indian Law.

Item 1, Exh. 2, pp 1–2.

centers upon the franchise and its construction, the case presents no issue regarding the rights of the Tonawanda Band in its relationship with the federal government, the United States is not a party to the litigation, and the tribe has not demonstrated a need for nationally uniform rules governing the transaction at issue. *See* 626 F.2d at 715. Accordingly, there is no federal common law basis for finding that the dispute in this action meets the "arising under" requirement of § 1331.

Although not pleaded, Plaintiff and the non-moving Defendants asserted at oral argument that federal question jurisdiction exists by virtue of Chapter 8 of the federal Indian Law, 25 U.S.C. §§ 311–28, providing for federal government approval of rights-of-way over Indian lands. *See* 25 U.S.C. §§ 323, 324. According to this argument, federal jurisdiction is necessarily invoked since the dispute involves rights-of-way under the franchise agreement to enter and provide electrical service on tribal lands.

However, none of the claims or counterclaims call into question the validity of Niagara Mohawk's rights-of-way under the franchise agreement or under Chapter 8 of the federal Indian Law. Indeed, Niagara Mohawk has strenuously maintained throughout the proceedings that the validity of the franchise is not disputed, and that the only question for the court is whether the franchise requires the tribe's approval prior to providing electrical service to a qualified applicant residing on the Tonawanda Reservation. The question raised in the action relates to the obligations of the parties to the franchise agreement, not the underlying validity of the franchise. Plaintiff cannot invoke federal question jurisdiction simply by arguing, as a response to the sovereign immunity defense, that the rights-of-way under the franchise agreement are governed by the rights-of-way provisions of federal Indian Law. That argument does not, by itself, necessarily draw into question the interpretation or application of those provisions, or create a controversy respecting the validity, construction or effect of those provisions, as required by the "well-pleaded complaint" rule. In this case, the underlying right or obligation sought to be adjudicated arises only under state or common law, "and federal law is merely alleged as a barrier to its effectuation...." *Oneida Indian Nation, supra,* 414 U.S. at 662, 94 S.Ct. at 775 (citing *Gully, supra,* 299 U.S. 109, 57 S.Ct. 96)).

The complaint, in passing, mentions the federal Non–Intercourse Act, which prohibits alienation of Indian lands unless authorized "by treaty or convention entered into pursuant to the Constitution." 25 U.S.C. § 177. However, no allegation or argument has been made by any of the parties that the rights-of-way created by the franchise agreement somehow violate the Non–Intercourse Act so as to provide a basis for federal question jurisdiction.

Finally, Plaintiff has not asserted (nor could it assert) jurisdiction under 28 U.S.C. § 1362, which by its terms grants federal question jurisdiction over civil actions "brought by any Indian tribe or band ..., wherein the matter in controversy arises under" federal law.

Simply put, when considered apart from the defense of sovereign immunity, the claims and counterclaims in this action do not draw into question the application or interpretation of Chapter 8 of the Indian Law, the Non–Intercourse Act, or any other federal law upon which § 1331 jurisdiction might be based. This case is not one "arising under the Constitution, laws, or treaties of the United States."

For these reasons, it is recommended that the district court dismiss the action for lack of federal question jurisdiction.

## 2. Sovereign Immunity.

Even if the jurisdictional allegations in the complaint were sufficient to establish federal question jurisdiction, the case should be dismissed based on sovereign immunity. Since Indian tribes are "domestic independent nations" that exercise inherent sovereign authority over their members and territories, they are immune from suits in state or federal courts "absent a clear waiver by the tribe or congressional abrogation." *Oklahoma Tax Commission v. Potowatomi Tribe,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) (quoting *Cherokee*

*Nation v. Georgia,* 5 Pet 1, 17, 8 L.Ed. 25 (1831)); *See also Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 1676, 56 L.Ed.2d 106 (1978); *Fluent v. Salamanca Indian Lease Authority,* 928 F.2d 542, 545 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 74, 116 L.Ed.2d 48 (1991). Sovereign immunity operates as a bar to federal jurisdiction even when no other forum is available for resolution of the claims at issue. *Fluent, supra,* 928 F.2d at 547.

■■■ Plaintiff does not dispute these basic principles. Nor does Plaintiff argue that any express Congressional abrogation of immunity applies here. Rather, Plaintiff contends that the Tonawanda Band and the individual members of the Council of Chiefs waived sovereign immunity with respect to suits seeking enforcement of the franchise when the tribe subjected itself to the jurisdiction of the New York State Public Service Commission and the courts of Erie, Niagara and Genesee Counties during franchise approval proceedings. However, a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969) (quoted in *Santa Clara Pueblo, supra,* 436 U.S. at 58, 98 S.Ct. at 1676); *Fluent, supra,* 928 F.2d at 545. The mere appearance of the tribe at formal court or regulatory proceedings on behalf of its members does not waive the sovereign immunity of the tribe itself. *See, e.g., Puyallup Tribe v. Washington State Game Dept.,* 433 U.S. 165, 171–72, 97 S.Ct. 2616, 2620–21, 53 L.Ed.2d 667 (1977). Plaintiff has failed to produce any transcript or other record of the franchise approval proceedings that might indicate a clear and unequivocal expression of waiver on behalf of the tribe or the individual members of its Council of Chiefs. Even if such a record existed, the question would still be presented whether an individual waiver expressed in 1936 would be valid as applied to any individual member of the Council of Chiefs in 1993.

In the absence of an express waiver, this court cannot imply that the tribe's appearance at proceedings held fifty-seven years ago for the sole purpose of obtaining approval of its agreement with Plaintiff to provide electrical power on the reservation has waived its sovereign immunity, or that of the individual members of the Council of Chiefs "acting in their official capacity and within the scope of their authority . . .," *United States v. Oregon,* 657 F.2d 1009, 1012 n. 8 (9th Cir.1981), against suit in federal court seeking a declaration of the rights and obligations of the parties under the terms of that agreement.

■■■ Moreover, Plaintiff's allegation that the individual council members acted outside of their authority by demanding prior approval over the provision of electrical service or banishing the non-moving Defendants from the reservation[4] is insufficient to allow this action to proceed against those individuals. It is true that tribal immunity does not extend to tribal officials allegedly acting in violation of federal law or outside of the scope of representative authority properly conferred by the tribe. *Burlington Northern v. Blackfeet Tribe,* 924 F.2d 899, 901–02 (9th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 3013, 120 L.Ed.2d 887 (1992); *cf. Tenneco Oil v. Sac & Fox Tribe of Indians of Oklahoma,* 725 F.2d 572, 574–75 (10th Cir. 1984) (presence or absence of federal question jurisdiction tied to sovereign immunity issue; federal question was presented where challenge to tribal regulations governed by federal common law; allegations that tribal official acted outside authority were thus sufficient to invoke exception to tribal immunity doctrine). However, "[m]erely being wrong or otherwise actionable does not take an action outside the scope of immunity." *Tenneco Oil, supra* at 576 (citing *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 695,

4. The questions as to whether tribal officials have valid authority to order banishment of tribe members, or whether the exercise of that authority was contrary to federal law, are addressed in each of the individual actions filed in this court by the non-moving Defendants and assigned to Judge Arcara, the referring judge in the instant action. *See* note 2, *supra.* In the absence of any substantive argument, briefing or submission of proof on these questions, this court must necessarily refrain from recommending a ruling on the instant motion with the potential for a result inconsistent with the resolution of the same issues presented in those other cases.

69 S.Ct. 1457, 1464, 93 L.Ed. 1628 (1949) (actions of officer not conflicting with valid authority are actions of sovereign, whether or not they conform with general law)).

Here, the claim that the Council's interpretation of the franchise language is contrary to law does not invoke the *ultra vires* exception to the sovereign immunity doctrine. Plaintiffs have failed to demonstrate how this action by the Council could be construed as anything other than an erroneous reading of the franchise agreement. Further, Plaintiffs have not shown that the Council's action conflicts with the valid authority of the Council as the recognized governing body of the Tonawanda Band. *See* Item 15, Exh. A (Letter dated February 3, 1992, from B.D. Ott, Area Director of the Bureau of Indian Affairs, United States Department of Interior, recognizing authority of Council and individual moving Defendants).

Accordingly, the claim for declaratory relief should be dismissed.

### 3. The Tribe as an Indispensable Party under Rule 19.

 Plaintiff contends that even if sovereign immunity bars this action against the Tonawanda Band or the members of its Council of Chiefs, the action should proceed to a determination of the non-moving Defendants' counterclaim against Plaintiff seeking damages and injunctive relief for Plaintiff's alleged breach of its obligations under the franchise and state Public Service law. The moving Defendants assert that if sovereign immunity protects them from suit, the entire action should be dismissed under Fed. R.Civ.P. 19 because of its status as an indispensable party to any dispute over the terms of the franchise.

The procedure for determining independent party status is set forth in Rule 19, which states in pertinent part:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....

(b) **Determination by Court Whenever Joinder not Feasible.** If a person described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(a), (b).

Just as the Second Circuit found in the *Fluent* case, "[t]here can be no doubt that the [Tonawanda Band] qualifies under Rule 19(a) as an indispensable party to these claims" for declaration of the parties' rights and obligations under the franchise agreement. *Fluent, supra,* 928 F.2d at 547. As a party to the agreement under which Plaintiff's franchise has operated for fifty-seven years, the Tonawanda Band's interest in the meaning of the franchise language is significant. The interest of the Tonawanda Band which is at the center of this dispute is its claimed right under the agreement to prior approval of Niagara Mohawk's provision of electrical power to Reservation residents, and a determination on the merits of the counterclaim by the non-moving Defendants against Plaintiff could impair or impede the tribe's ability to exercise that right. That is,

a determination in favor of the non-moving Defendants would, in essence if not in substance, result in a holding that Niagara Mohawk has wrongly refused to provide those applicants with electrical power and that prior approval by the Tonawanda Band is not required. Thus, the very issue precipitating this action—*i.e.*, whether the franchise agreement requires the tribe's approval prior to Niagara Mohawk's provision of electrical service to a user on the Reservation—could be decided adversely to the tribe without its ever having had the opportunity to protect its interest as a party to the agreement.

■ In addition, and also as recognized by the *Fluent* court, "[n]o procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable." *Fluent, supra* at 547 (quoting *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir.1975), *cert. denied*, 425 U.S. 903, 96 S.Ct. 1492, 47 L.Ed.2d 752 (1976)). Here, although the action brought by Plaintiff seeks judicial construction of the language of the franchise rather than an order setting aside the agreement, it is undeniable that a determination in the counterclaimants' favor would significantly affect the tribe's interest, based on its interpretation of the franchise language, in the right of prior approval for provision of electrical service to Reservation residents.

■ The moving Defendants "being thus regarded as indispensable" under Rule 19(a), the court must next determine whether "in equity and good conscience" the action should proceed in the absence of those Defendants, or whether it should be dismissed, pursuant to the factors set forth in Rule 19(b). Under the Second Circuit's holding in *Fluent*, where an indispensable party is absent from the suit due to sovereign immunity, the Rule 19(b) factors are accorded less weight in the equitable determination because of the "paramount importance accorded the doctrine of sovereign immunity under [r]ule 19." *Fluent, supra* at 548; *see also Enterprise Management Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir.1989) (when a necessary party

under Rule 19(a) is immune from suit, there is very little room for balancing other factors set out in Rule 19(b) since immunity is itself a compelling interest); *Wichita & Affiliated Tribes of Oklahoma v. Hodel*, 788 F.2d 765, 777 n. 3 (D.C.Cir.1986).

In light of the "paramount importance" of sovereign immunity, and in light of the discussion above regarding potential prejudice to the tribe's interests as a party to the franchise agreement if this action proceeds in its absence, the district court should dismiss the action pursuant to Rule 19 for failure to join an indispensable party.

### 4. Intervention.

Since it is recommended that the action be dismissed for lack of federal question jurisdiction or, in the alternative, for lack of subject matter jurisdiction based on sovereign immunity and failure to join an indispensable party, and in the absence of an independent jurisdictional basis for the proposed intervenor's claim, it is recommended that Neville Spring's motion to intervene likewise be denied. *Aeronautical Radio, Inc. v. F.C.C.*, 983 F.2d 275, 283 (D.C.Cir.1993); *New York State Energy & Research Development Authority v. Nuclear Fuel Services, Inc.*, 102 F.R.D. 18, 26–27 (W.D.N.Y.1983).

### CONCLUSION

For the above reasons, it is recommended that this action be dismissed in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 30(a)(3).

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.*** *Thomas v. Arn*, 474

U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, et al. v. Canadair Ltd., et al.,* 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 30(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." ***Failure to comply with the provisions of Rule 30(a)(3), or with the similar provisions of Rule 30(a)(2) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.***

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

**So Ordered.**

DATED: Buffalo, New York
November 18, 1993