*22 ORDER (Denying Motion to Quash)
TODD R. MATHA, Chief Judge.
INTRODUCTION
The Court must determine whether to grant the defendants’ motion to quash. The defendants assert that the individuals subpoenaed to appear at a deposition maintain sovereign immunity from suit. The Court disagrees with this assertion as a principle of law, and furthermore holds that the defendants have not effectively pled a defense of official immunity.
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail within its previous judgment. Order (Regarding Disc.), CV 08-36 (HCN Tr. Ct., Jan. 6, 2009) at 1-2. For purposes of this decision, the Court notes that the defendants, by and through Legislative Counsel Huma Alisan, informed the Court on January 8, 2009, that it had served discovery requests upon three (3) Executive Branch employees. Def. ⅛ [sic ] Reg. for Interrogs. & Def. ⅛ [sic ] Regs, for Docs., CV 08-36 (Jan. 8, 2009); see also Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rules 32, 34. Also on January 8, 2009, the defendants requested that the Court issue two (2) Subpoena(s) to Appear for Deposition and a Subpoena, Duces Tecum. See Order (Regarding Disc.) at 7-9; see also HCN R. Civ. P. 33. The plaintiff, by and through Attorney Mark L. Goodman, likewise submitted four (4) Subpoena(s) to Appear for Deposition on January 12, 2009.[1] Id.
However, on January 16, 2009, the defendants filed the Motion to Quash Subpoena for Representative Garvin, Green-grass, Decorah & Judge Thompson & Motion to Dismiss (hereinafter Motion to Quash and Motion to Dismiss, respectively) accompanied by Defendant’s [sic ] Brief in Support of Motion to Quash & Motion to Dismiss (hereinafter Defendants’ Brief). See HCN R. Civ. P. 18. Consequently, the Court issued its January 19, 2009 Order (Motion Hearing) and Notice(s) of Hearing, which informed the parties of the date, time and location of the Motion Hearing.[2] On January 23, 2009, the plaintiff submitted a Reply to *23 Defendants Motion to Quash & to Dismiss, See HCN R. Cm P. 19(B).
The Court convened the Motion Hearing on January 27, 2009 at 8:30 a.m. CST. The following parties appeared at the Hearing: Gerald L. Cleveland, Jr., plaintiff; Attorney Mark L. Goodman, plaintiffs counsel; and Legislative Counsel Huma Ahsan, defendants’ counsel. The Court announced a decision from the bench, and the defendants expressed an intent to appeal the judgment.[3] Mot. Hr’g (LPER, Jan. 27, 2009, 09:19:01, 09:26:49 CST).
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art. IV—General Council
Sec. 2. Delegation of Authority. The General Council hereby authorizes the legislative branch to make laws and appropriate funds in accordance with Article V. The General Council hereby authorizes the executive branch to enforce the laws and administer funds in accordance with Article VI. The General Council hereby authorizes the judicial branch to interpret and apply the laws and Constitution of the Nation in accordance with Article VII.
Art. V—Legislature
Sec. 2. Powers of the Legislature. The Legislature shall have the power:
(b) To establish Executive Departments, and to delegate legislative power's to the Executive Branch to be administered by such Departments, in accordance with the law; any Department established by the Legislature shall be administered by the Executive; the Legislature reserves the power to review any action taken by virtue of such delegated power;
(d) To authorize expenditures by law and appropriate funds to the various Departments in an annual budget;
Sec. 13. Budget. The Legislature shall enact an annual budget. The budget shall include an appropriation of operating funds for each branch of government. The Legislature shall not appropriate funds which have not been authorized by law. No item shall be included in the budget if it is not authorized by law.
Art. VI—Executive
Sec. 2. Powers of the President. The President shall have the power:
(a) To executed and administer the laws of the Ho-Chunk Nation;
(d) To administer all Departments, boards, and committees created by the Legislature;
Art. VII—Judiciary
Sec. 4. Powers of the Judiciary. The judicial power of the Ho-Chunk Nation shall be vested in the Judiciary. The Judiciary shall have the power to interpret and apply the Constitution and law's of the Ho-Chunk Nation.
Sec. 5. Jurisdict ion of the Judiciary.
(a) The Trial Court shall have original jurisdiction over all cases and controversies, both criminal and civil, in law or in equity, arising under the Constitution, laws, customs and traditions of the Ho-Chunk Nation, including cases in which the Ho-Chunk Nation, or its officials and employees, shall be a party. Any such case or controversy arising within *24 the jurisdiction of the Ho-Chunk Nation shall be filed in the Trial Court before it is filed in any other court. This grant of jurisdiction by the .General Council shall not be construed to be a waiver of the Nation’s sovereign immunity.
Art. XII—-Sovereign Immunity
Sec. 1. Immunity of Nation from Suit. The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity, and official and employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.
Sec. 2. Suit Against Officials and Employees. Officials and employees of the Ho-Chunk Nation who act beyond the scope of their duties or authority shall be subject to suit in equity only for declaratory and non-monetary injunctive relief in Tribal Court by persons subject to its jurisdiction for purposes of enforcing rights and duties established by this constitution or other applicable laws.
HO-CHUNK NATION DEPARTMENT OF JUSTICE ESTABLISHMENT & ORGANIZATION ACT OF 2001, 1 HCC § 8
Subsec. 4. Functions. The Department of Justice shall:
a. Defend the sovereignty of the Nation.
b. Provide expert legal advice and competent representation for all Branches of the Nation on those matters that concern the Nation’s interests and welfare.
c. Represent the Nation in Tribal, State, and Federal forums.
TRIAL CLAIMS ACT OF 2000, 2 HCC § 17
Subsec, 2. Purpose.
c. An administrative claims procedure that requires the presentation of a claim to an administrative body, before entering into negotiations with the Legislature, will reduce litigation against the Nation, protect the Nation’s assets, and expedite the payment of legitimate claims and money damages due to governmental entities arising from breaches of compact, contract or the negligent acts of the Nation’s employees.
d. The purpose of this Act is to establish an administrative procedure by which any Federal, State, or local public entity who believes the Nation owes them money as a result of a breach of compact, contract or damage are required to submit an administrative claim to the Claims Against Nation Administrative Board to allow it to consider the merits of the claim and either approve or reject the claim as a precondition of entering into binding negotiation with the Legislature.
Subsec. Scope.
a. This Act is intended to provide a forum for the Nation to be made aware of potential claims against it prior to the Legislature entering into binding negotiations with a sovereign entity.
Subsec. 6. Claims Subject to Filing Requirements.
a. All claims against the Nation, its officers, agents and employees, or any of its business enterprises brought by a claimant for money or damages or for an alleged breach of a compact or contract, shall be presented to a Claims Against Nation Administrative Board and acted upon as a prerequisite to the claimant entering into binding negotiation with the Legislature as further provided in this Act. All such claims shall be presented as required by this Act and in the time periods specified therein.
*25 HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Ch. II—Beginning an Action
Rule 6. Answering a Complaint. A party against whom a Complaint has been made shall have twenty (20) calendar days from the date the Summons is issued, or from the last date of service by publication, to file an Answer with the Clerk of Court. The Answer shall use short and plain statements to admit, admit in part, or deny each statement in the Complaint, assert any and all claims against the other parties arising from the same facts or circumstances as the Complaint and state any defenses to the Complaint. The Complaint must contain the full names of all parties and any counsel. The Answer must be signed by the party or his or her counsel and contain their full names and addresses, as well as a telephone number at which they may not be contacted. An Answer shall be served on other parties and may be served by mail. A Certificate of Service shall be filed as required by Rule 5(B).
Rule 7. Defenses and Counterclaims.
A defense that alleges new facts excusing the conduct of the defendants if statements in the Complaint are true must be affirmatively stated. Counterclaims arising from the same facts or circumstances as alleged in the Complaint shall be raised in the Answer. If a party fails to raise such Counterclaims, he/she shall be forever barred from bringing them to the Court in a future action. Other claims against parties in the action may also be raised in the Answer. A party may file a response to counterclaims raised in the Answer, but is not required to do so.
Rule 8. Requests to Appear before the Traditional Court.
(A) Requests to Transfer Case to Traditional Court. Whenever a party or parties have a right to be heard by the Trial Court, a party may request to appear before the Traditional Court on matters related to eustom and tradition of the Ho-Chunk Nation. All parties involved in the dispute must voluntarily consent to appear before the Traditional Court and to be bound by its decision. A party or parties that bring an action before the Trial Court may elect to appear before the Traditional Court at any time.
(B) Requests for Assistance on Matters of Custom and Tradition. Upon a motion of the Court of by a party, the Trial Court may request assistance from the Traditional Court on matters relating to custom and tradition of the Nation, pursuant to the Ho-Chunk NATION JUDICIARY Establishment and Organization Act, 1 HCC § 1.12.
Ch. Ill—General Rules for Pleading
Rule 18. Types of Motions.
Motions are requests directed to the Court and must be in wilting except for those made in Court. Motions based on factual matters shall be supported by affidavits, references to other documents, testimony, exhibits or other material already in the Court record. Motions based on legal matters shall contain or be supported by a legal memorandum, which states the issues and legal basis relied on by the moving party. The Motions referenced within these rules shall not be considered exhaustive of the Motions available to litigants.
Rule 19. Filing and Responding to Motions.
(B) Responses. A Response to a written Motion must be filed at least one (1) day before the hearing. If no hearing is scheduled, the Response must be filed with the Court and served on the other parties within ten (10) calendar days of the date *26 the Motion was tiled. The party filing the Motion must file any Reply within three (3) calendar days.
Ch. V—Discovery
Introduction. Discovery is the process used among parties to uncover evidence relevant to the action, including identity of persons having knowledge of facts. Discovery may take place before an action has been filed and may be used for the purpose of preserving testimony or other evidence which might otherwise be unavailable at the time of trial. Discovery may include written interrogatories, depositions, and requests for the production of documents and things. It is the policy of the Court to favor open discovery of relevant material as a way of fostering full knowledge of the facts relevant to a case by all parties. It is the intent of these rules that reasonably open discovery will encourage settlement, promote fairness and further justice.
Rule 32. Interrogatories.
A party may submit interrogatories (written questions) to other parties. The requesting party must receive the responding party’s written answers, under oath, within twenty-five (25) calendar days of receiving them. The responding party must include facts he/she knows, facts available to him/her, and give opinions, if requested.
Rule 33. Depositions.
A party may take a deposition (testimony, under oath and recorded) of a deponent (another party or witness) after giving at least five (5) calendar days notice of the time and place where the deposition will occur to all parties and the deponent. All parties may ask the deponent questions. Depositions may take place by telephone and be recorded stenographieally, by tape recording or by other means if the parties agree or the Court so orders.
Rule 34. Requests for Documents and Things.
A party may request another party to produce any documents or things within his/her possession or control for the purpose of inspection and/or copying. This includes permission to enter onto land for testing. The responding party must make the documents or things available to the requesting party within twenty-five (25) calendar days of the date of receiving the request.
FINDINGS OF FACT[4]
1. The Court incorporates by reference Findings of Fart 1-2 as enumerated in a previous decision. Order (Regarding Disc.) at 1-2.
2. On August 6, 2008, the defendants filed the initial responsive pleading in which the following defense is asserted: “The HCN Constitution provides that officials and employees of the Ho-Chunk Nation acting within the scope of their duties shall be immune from suit.” Defs. Answer, CV 08-36 (Aug. 6, 2008) (citing Constitution of the Ho-Chunk Nation (hereinafter Constitution), Art. XII, § 1).
3. On December 1, 2008, the plaintiff alleged in his amended pleading that the defendants acted outside the scope of their duties or authority. Am. Corn/pl, CV OS-36 (Dec. 1, 2008) at 5.
4. On December 11, 2008, the defendants filed the amended responsive pleading in which they reiterate the above de *27 fense. Defs. ’ Am. Anmver, CV 08-36 (Dec. 11, 2008) at 2.
5.On January 16, 2009, the defendants offered the following clarification of the above-asserted defenses: Defs.’ Br. at 14-15. The defendants cite two (2) external authorities to corroborate the assertion that “[t]ribal immunity does protect tribal officials when acting in their official capacity and within their scope of authority.” Id. at 14 (citing Davis v. Littell, 398 F.2d 83, 84-85 (9th Cir.1968);[5] Niagara Power Corp. v. Tonawanda Bond of Seneca Indians, 862 F.Supp. 995, 1002, (W.D.N.Y.1994)).[6]
The problem in this case is that the Government officials the Plaintiff has served with unsigned subpoenas are protected and shielded by Sovereign immunity, which they and the Ho-Chunk Legislature have not expressly waived. If the Court were to require these government officials to testify, the Court would in fact be forcing the Defendant’s [sic ] to waive the very defense they are asserting.... Therefore, since the Defendant’s [sic ] were protected by the doctrine of Sovereign Immunity when the subpoenas were served, the defendants move that the plaintiffs subpoenas be quashed. Further, since the plaintiff will not be able to overcome the sovereign immunity barrier, he can not thusly force or compel testimony from these protected government officials: Representative Greengrass, Garvin, Decorah and Judge Thompson. Thusly, the Court should quash the subpoenas for Representative Greengrass, Garvin, De-corah and Judge Thompson.
6. The defendants cite no other tribal authority for its contention that the defendants and Traditional Court member Preston L. Thompson, Jr. maintain sovereign immunity, and, therefore, cannot be subject to deposition.
7. On January 12, 2009, the plaintiff mailed unsigned copies of the Snbpoe-nas(s) to Appear for Deposition to the defendants, thereby affording a greater degree of notice, but the presiding judge subsequently affixed his signature to these documents prior to directing judicial administrative staff to perform personal service.
8. President Wilfrid Cleveland directed the issuance of a check made payable to the plaintiff in the amount of $5,000.00 on or about April 17, 2008, and on two (2) subsequent occasions, deducting said *28 amount from an.Executive Branch sponsorship line item. Mot. Hr’g (LPER, 08:55:12 CST); Defs.’ Br. at 2; Am. Compl. at 3; Aff. of Wilfrid Cleveland, CV 08-36 (Nov. 12, 2008) at 2-3.
9. Thereafter, one or more of the defendants refused to sign the check on at least three (3) occasions. Defs. ’ Br. at 2-3; Defs. ’ Am, Answer at 1-2; Am, Compl. at 8—il; Aff. of Wilfrid Cleveland at 2-3.
10. The defendants proffered the following justifications for refusing to sign the check:
a. On April 21, 2008, the Ho-Chunk Nation Traditional Court pronounced its recommendation “that to sponsor or fund special projects within the meaning of traditions does not include pow-wowrs or other activities away from our country.”[7] Aff. of Representative Robert,a Decorah, CV 08-36 (Dec. 30, 2008) at 1; Aff. of Representative Elliot Garvin, CV 08-36 (Dec. 30, 2008) at 1; Aff. of Representative Douglas Greengrass, CV 08-36 (Dec. 29, 2008) at l.[8]
b. The defendants maintain that the Legislature has the constitutional “power to review any action” of the Executive Branch by virtue of an unspecified delegation of legislative power.[9] Id, (quoting Const., Art. V, § 2(b)).
11. The Court has no evidence demonstrating the number of times, if any, that the Legislature has “sponsor[ed] or rund[ed] special projects ..., including] pow-wows or other activities away from our country.” Aff(s). of Representative(s) Decorah, Garvin & Greengrass at 1.
12. Prior to the presidential directive, the Community Relations Committee denied the funding request. Defs. ’ Br. at 2. The defendants contend that the Committee was created by the Ho-Chunk Nation Legislature since a draft version of its bylaws indicates that “[t]he Community Relations Fund was created by the Ho-Chunk *29 Nation Legislature.... Mot. Hr’g (LPER, 08:55:53 CST) (citing Defs.’ Br., Attach, B at 1). No evidence exists demonstrating the finality of the by-laws or whether the President would lack authority to modify or bypass the draft, or final, procedures.
13. Moreover, the defendants are unaware if the President could independently allocate funds from the Executive Branch sponsorship line item in question. Id., 08:55:29 CST. The defendants nonetheless earlier argued that “[t]he President does not have the authority to usurp the retained appropriation powers of the Legislature by forcing the legislatively created Community Relations Committee to commit an act, which is in direct violation of its own procedures and by-laws.”[10] Id., 08:41:18 CST.
14. The defendants presented no constitutional history to aid in interpreting Article XII of the Constitution.
DECISION
The Court shall summarily address some of the grounds for the defendants’ Motion to Dismiss since the Court regards the dispositive motion as premature for reasons made apparent by the above factual findings. The President may indeed possess the authority to direct the issuance of checks from the sponsorship line item. At this point, none of the parties have this information, possibly because the discovery process has failed to yield any demonstrable results. Also, the defendants have apparently relied upon the CRC by-laws for refusing to sign the check, but the Court remains unaware of whether these by-laws are presently in effect or binding upon the actions of the President. These facts could drastically impact the outcome of this case.
Regardless, the defendants contend that the plaintiffs alleged injury is not traceable to the defendants’ actions, arguing that “[t]he problem here with the Plaintiffs case is that ultimately he is seeking the Court to compel the Legislature to appropriate [the] monetary amount of $5,000, which he is not entitle [sic] to because his request was process [sic ] and denied.” Defs. ’ Br. at 22 (citing Pettibone, CV 01-84 at 10). Yet, as reflected above, the CRC denial may not prove dispositive in this case. Moreover, in most instances, a plaintiff easily satisfies a standing inquiry at a motion to dismiss phase, especially prior to any meaningful discovery. See, e.g., Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); NCAA v. Califano, 622 F.2d 1382, 1392 (10th Cir.1980) (requiring that pleading allegations relating to standing be favorably construed when considering a motion to dismiss).
The defendants additionally assert that the plaintiff suffered no injury when the defendants’ actions denied him the receipt of $5,000.00. Defs.’ Br. at 21 (citing Petti-bone, CV 01-84 at 10). The defendants conclude that “[t]he Plaintiff was intending to go th[e] Pow-wow prior to contacting the Legislature.” Id. The Court fails to see how this or similar observations tend to negate the alleged deprivation. The plaintiff believed that the expected contribution from the Office of the President would assist in offsetting costs of attendance and participation, and this harm has *30 not necessarily ceased because the plaintiff alternatively provided for these costs. The Court has insufficient facts to render such a determination.
The defendants’ remaining arguments for the Motion to Dismiss coincide with the grounds for the Motion, to Quash with a single exception. The defendants argue that the Court cannot entertain the instant suit since the plaintiff failed to adhere to the dictates of the Trial Claims Act of 2006. Defs. ’ Br. at 17-20. The Court has not had previous occasion to review this relatively recent piece of legislation. Several constitutional questions arise when examining this statute, but the Court will refrain from a thorough critique. For purposes of responding to the dispositive motion, the Court will simply note a few glaring internal inconsistencies within the statute. In the “Purpose” subsection, the Legislature clearly denotes that the “administrative claims procedure” exists to handle “legitimate claims and money damages due to governmental entities,” i.e., “any Federal, State, or local public entity.” Trial Claims Act of 2006, 2 HCC § 17.2c-d. Likewise, the intended scope of the act is “to provide a forum for the Nation to be made aware of potential claims against it prior to the Legislature entering into binding negotiations with a sovereign entity.” Id., § 17.3a. These foundational subsections appear to directly contradict the later “Claims Subject to Filing Requirements ” subsection. Id., § 17.6a. The Court, therefore, questions the application of the statute to this fact situation since the statute itself proves entirely unclear.
Turning to the Motion to Quash, the defendants insist that they maintain sovereign immunity from suit, and consequently cannot be compelled to submit to a deposition. The defendants also assert this defense on behalf of Traditional Court member Preston L. Thompson, Jr.[11] As reflected above, the defendants cited two (2) federal cases in support of this proposition, neither of which even prove persuasive on the limited, and largely unrelated, issues discussed within each. Supra notes 5-6. The Court accordingly begins its examination with the text of the constitutional sovereign immunity article.
Article XII simultaneously addresses several components of the doctrine of immunity, which can be principally divided into sovereign and official categories with absolute and qualified immunities falling under the latter category. Const., Art. XII, §§ 1-2. The first category of immunity, sovereign immunity, is found in Section 1, namely: “The Ho-Chunk Nation shall be immune from suit except to the extent that the Legislature expressly waives its sovereign immunity....” Id., § 1. This immunity extends to the separate branches and sub-entities of the tribe. Timothy G. Whiteagle et al. v. Alvin Cloud, Chairman of the Gen. Council of Oct. 11, 2003, in his official capacity, et al, SU 04-06 (HCN S.Ct., Jan, 3, 2005) at 6; Chloris A. Lowe, Jr. v. Ho-Chunk Nation et al., SU 97-01 (HCN S. Ct, June 13, 1997) at 3-4. However, this immunity does not automatically extend to encompass individuals.
*31 That being said, the second clause of Section 1 provides that “officials and employees of the Ho-Chunk Nation acting within the scope of their duties or authority shall be immune from suit.” Const., Akt. XII, § 1. The constitutional text does not indicate whether this form of immunity is either sovereign or official, but a line of federal case law does allow the immunity of the sovereign to extend to certain actions of its officials and employees. These cases typically involve complicated factual scenarios focusing upon an absence of alleged wrongful conduct by the individual defendant, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 686, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), or, more usually, a request of significant monetary damages payable from the state treasury for past harms perpetrated by individual officers whose course of conduct was subsequently adjudged to offend previously vested rights. Edelman v. Jordan, 415 U.S. 651, 668, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
Oft-cited admonitions have arisen from these cases, such as:
If the denomination of the party defendant by the plaintiff were the sole test of whether a suit was against the officer individually or against his principal, the sovereign, our task would be easy.... [I]t has long been established that the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign.
Larson, 337 U.S. at 687, 69 S.Ct. 1457. Similarly, “ ‘[w]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants.”’ Edelman, 415 U.S. at 663, 94 S.Ct. 1347 (quoting Ford Motor Co. v. Dep’t of Treas., 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)).[12] The Court, however, could not locate a single case involving a charitable contribution initially approved by the sovereign, but subsequently -withheld by sovereign actors. In such an instance, the Court questions whether the relief sought could be properly regarded as a retroactive damage award. And, as discussed below, the plaintiff may select to amend his pleading after the conclusion of discovery, including the request for relief.
The defendants were unrelenting in their assertion that they maintained sovereign immunity from suit. The defendants, however, did not present anything resembling the above discussion. First and foremost, the Court must be capable of determining whether an official or employee has acted in conformance with his or her constitutional or statutory scope of authority. Const., Art. XII, § 1. The Court cannot discern whether an official or employee remains underneath the umbrella of sovereign immunity absent meaningful fact-finding, which has not occurred in this case. The plaintiff wishes to depose the defendants in an effort to deduce facts that might substantiate his legal theory. The defendants, alternatively, wish to deny this ability, and force the Court to resolve a constitutional case on uncertain and incomplete facts. Tribal attorneys uniformly assert that an official is acting within the scope of his or her duties and authority, but this assertion is seldom accepted at face value. A judicial determination must occur, which does not necessarily focus upon the intent of the official or employee. See Idaho v. Coeur d’Alene Tribe, 521 U.S. *32 261, 312, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997) (Souter, J., dissenting).
Moreover, the Supreme Court has never held that the second clause in Section 1 refers to a species of sovereign immunity. Instead, the Supreme Court has suggested that Section 1 references official immunity, and Section 2 incorporates an exception to this type of immunity. Lowe, Jr., SU 97-01 at 4 n. 2. In choosing to cite Davis, the defendants likewise introduce a species of official immunity into the examination. The defendants confusingly choose to rely upon a case dealing with absolute executive immunity, but the federal courts have recognized several forms of official absolute immunity. Most importantly, however, the Ho-Chunk Judiciary has never recognized the constitutional presence of any form of absolute immunity.
Relevant for our purposes, the doctrine of absolute legislative immunity, as it pertains to the United States Congress, is founded in the Speech and Debate Clause.[13] Eastland v. U.S. Servicemen’s Fund, 421 U.S. 491, 503-07 (1975); Barr v. Matteo, 360 U.S. 564, 569, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). Specifically, “for any Speech or Debate in either House, [the Senators and Representatives] shall not be questioned in any other Place.” U.S. Const., art. I, § 6, cl. 1. Our constitutional text contains no such clause, so any claim of absolute legislative immunity must derive from some other source.
In 1951, the United States Supreme Court first extended a common law version of legislative immunity to state legislators. Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). The Ten-ney Court held state legislators absolutely immune from civil suits provided they acted within “the sphere of legitimate legislative activity.” Id. at 376, 71 S.Ct. 783. Legislative immunity is the freedom of the legislator from not only the results of litigation, but also the burden of defending themselves. Dombrowski v. Eastland, 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967). If immunity from civil liability attaches to an action, then legislators receive immunity from testifying as well. 2BD Assocs. Ltd. P’ship v. County Comm’rs for Queen Anne’s County, 896 F.Supp. 528, 531 (D.Md.1995).
When determining whether to accept a claim of absolute legislative immunity, courts focus upon the nature of the legislator’s actions. A state legislator does not receive legislative immunity for decidedly administrative actions. Id at 532. Instead, “[a] local governmental body acts in a legislative capacity when it engages in the process of adopting prospective legislative-type rules.” Roberson v. Mullins, 29 F.3d 132, 135 (4th Cir.1994); see also Brown v. Griesenauer, 970 F.2d 431, 437 (8th Cir.1992); Acevedo-Cordero v. Cordero-Santiago, 958 F.2d 20, 23 (1st Cir.1992); Hughes v. Tarrant County, 948 F.2d 918, 921 (5th Cir.1991); Crymes v. DeKalb County, 923 F.2d 1482, 1485 (11th Cir.1991); Ryan v. Burlington County, 889 F.2d 1286, 1290-91 (3rd Cir.1989); Haskell v. Washington Township, 864 F.2d 1266, 1278 (6th Cir.1988); Cinevision Corp. v. City of Burbank, 745 F.2d 560, 580 (9th Cir.1984) cert. denied, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480(1985).
*33 One court suggests two (2) tests for determining whether or not an action is legislative:
The first test focuses on the nature of the facts used to reach the given decision; if those facts are “generalizations concerning a policy or state of affairs,” then the decision is legislative. On the other hand, if those facts are specific, such as those relating to particular individuals or situations, then the decision is administrative. The second test focuses on the “particularity of the impact of the state of action.” If the action establishes general policy, it is legislative; if, on the other hand, it “single[s] out specifiable individuals and affectfs] them differently from others,” the action is administrative. Those tests for differentiating between administrative and legislative acts are set forth in the article in connection with requirements of procedural due process in an administrative as opposed to a legislative setting, and are formulated to be “responsive in all cases to the due process interests in efficiency, representation and dignity.”
2BD Assocs. Ltd. P’ship, 896 F.Supp. at 533 (citations omitted). The Court shall refrain from employing either of these tests in the present case.[14] As stated earlier, the Court has never recognized the existence of absolute legislative immunity from suit, and, if not premised on a constitutional provision, then the Court must find the concept within the Nation’s common law.
The Court has not performed a full-scale adoption of another jurisdiction’s common law Rather, the Court develops its own common law on the basis of articulated tradition and custom.[15] See, e.g., Dorothy G. Decorah v. Kim L. Whitegull, CV 02-17 (HCN Tr. Ct., Mar. 1, 2002); see also Const., Art. VII, § 5(a). The defendants have not presented an argument that a corollary to absolute legislative immunity existed in tribal tradition and custom. Additionally, neither party has received an opportunity to argue whether the act in question represented a legislative or administrative decision.
Despite the foregoing, the Supreme Court may have hinted at a third interpretation of Section 1 based upon its plain language. Lowe, Jr., SU 97-01 at 4 n. 2. The Supreme Court has repeatedly espoused a straightforward textual approach to constitutional interpretation. See, e.g., Chloris Lowe, Jr. et al. v. HCN Legislature Members Elliot Garvin et al, SU 00-17 (HCN S.Ct., Mar. 13, 2001) at 6; HCN Election Bd. et al. v. Aurelia L. Hopinkah, SU 98-08 (HCN S.Ct, Apr. 7, 1999) at 4. Quite simply, tribal employees maintain official immunity from suit unless the *34 plaintiff establishes that the individuals have “actfed] beyond the scope of their duties or authority.” Const., Art. XII, § 2. In that instance, a plaintiff could receive “declaratory and non-monetary injunctive relief.” Id.
Whether the officials or employees act under the umbrella of sovereign immunity or possess some form of general official immunity from suit, the Court still must engage in fact-finding to deduce the presence of an alleged constitutional or statutory violation. Yet, the defendants seem to desire a construct whereby only the defendants can perform discovery.[16] But see HCN R. Civ. P., Ch. V, Intro. TVs demonstrated above, only the presence of absolute official immunity would preclude attendance at the scheduled depositions. The defendants, however, failed to plead this form of immunity, which, again, does not presently exist in this jurisdiction.
In concluding the examination of Article XII, the Court has long recognized that Section 2 embodies the Ex Parte Young doctrine.[17] See Lonnie Simplot et al. v. HCN Dep’t of Health, CV 9S-2&-27, 96-05 (HCN Tr. Ct., Aug. 13, 1999) at 13 (citing Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). In order to receive relief, a plaintiff must overcome the substantial hurdle of proving that an official or employee acted ultra vires, i.e., beyond his or her powers. When successful, a party may obtain a remedy “in the nature of prospective forward relief, not damages to punish the defendant ... for ... past wrongs.” Hope B. Smith v. Ho-Chunk Nation, SU 03-08 (HCN S.Ct., Dec. 8, 2003) at 11; see also Robert A. Mudd v. HCN Legislature: Elliot Garvin et al., SU 03-02 (HCN S.Ct., Apr. 8, 2003) at 6 n. 2.
In this regard, the defendants claim that the plaintiff seeks an award of damages, but the Court disagrees with this characterization. To reiterate, President Cleveland may have properly exercised his authority in directing the issuance of the check. Furthermore, the defendants may have lacked authority or discretion to refuse signing the check. The Court currently lacks the necessary facts to determine either of these issues. If the plaintiff succeeds in satisfying his burden of proof, then the Court may enjoin the defendants to sign the check. The Court certainly recognizes the monetary character of such a judgment, but does not deem this manner of relief as a damage award against the Nation. See Ronald K. Kirkwood v. Francis Decorah, in his official capacity as Dir. of HCN Hous. Dep’t, et al., CV 04-33 (HCN Tr. Ct., July 27, 2006). Alternatively, the Supreme Court has condoned a litigant’s request for a stand alone declaratory judgment. Whiteagle, SU 04-06 at 10-11. The President has demonstrated a *35 willingness to reissue the cheek in question, and a plaintiff routinely receives the ability to amend his or her pleading following the discovery period. Scheduling Order, CV 08-36 (HCN Tr. Ct., Nov. 18, 2008) at 4.
In conclusion, the plaintiff has attempted to utilize the discovery process in the same manner as the defendants. There exists not the slightest insinuation that plaintiffs counsel would conduct the depositions in an unnecessarily combative or disrespectful manner. The defendants’ assertion of sovereign immunity is premature, and the confused assertion of absolute official immunity is not recognized in this jurisdiction. The Court, therefore, holds that the defendants must comply with the plaintiffs deposition requests, which he must obviously renew due to the previous refusal. The Court accordingly denies the defendants’ Motion to Qua,ah.
IT IS SO ORDERED this 2nd day of February 2009, by the Ho-Chunk Nation Trial Court located in Black River Falls, WI within the sovereign lands of the Ho-Chunk Nation.

. The parties had earlier agreed to schedule a series of depositions to occur oil Tuesday, January 27, 2009, and the plaintiff informed defendants' counsel that he anticipated deposing the three (3) named defendants. Status Hr'g (LPER at 4-5, Jan. 6, 2009, 01:38:06 CST). Plaintiffs counsel specifically inquired of defendants’ counsel whether the defendants would be available for deposition on January 27, 2009. Id. at 5, 01:42:55 CST.

. The Court obliged the defendants' request that it schedule a motion hearing to occur on January 27, 2009. Mot. to Quash at 2; Defs.’ Br. at 9.

. Despite service of subpoenas upon the defendants and plaintiffs earlier inquiry regarding availability, defendants' counsel informed the Court after its ruling that the defendants were attending a legislative meeting in Minrie-apolis, MN, and, therefore, unavailable for deposition. LPER, 09:27:03 CST. I he delon-dants never previously indicated a conflict with the legislative schedule. Defs. ’ Br.

. The Court includes the below cursory findings to illustrate the dearth of relevant facts available in the instant case due, in part, to the absence of any meaningful discovery conducted by the parties,

. In Davis, the Ninth Circuit Court of Appeals was called upon to determine whether the Navajo Nation possessed the authority to, and actually did, confer absolute executive immunity upon the General Counsel for the tribe. Davis, 398 F.2d at 84-85. The Davis Court answered this question in the affirmative by surmising that although the Navajo Nation had "not done so in its Tribal Code, nor, so far as we are informed, by any decision of its Tribal Court,” the Navajo Code did include a provision suggesting that “under such circumstances | it would | be guided by federal or appropriate state law,” which recognized absolute executive immunity. Id. at 84. The Davis decision does not stand for the proposition that a tribal official shares the sovereign immunity of the tribe, and also does not address absolute legislative or judicial immunities.

. The federal district court does not address official immunity in the slightest within its brief decision, which merely "adopts the proposed findings of the [Magistrate Judge’s] Report and Recommendation” without any legal analysis. Niagara Power Corp., 862 F.Supp. at 998. “Accordingly, for the reasons set forth in Magistrate Judge Heckman's Report and Recommendation], which remain entirely unknown], the Court ... dismisse[d] the action for lack of federal question jurisdiction, and in the alternative, for lack of subject matter jurisdiction based on foreign immunity.” Id. One cannot discern from the opinion the application, manner or extent of the tribal defendants’ foreign immunity.

. The accompanying affidavits refer to the Traditional Court proclamation as an “Order,” but this seems to misconstrue the character of this document, which internally refers to itself as a recommendation. The Traditional Court has never exercised jurisdiction over the present case, and neither the parties nor the Court formally sought assistance from the Traditional Court in connection with this action. See HCN R. Civ. P. 8(A-B). Nonetheless, the characterization of the Traditional Court decision should not detract from its authoritativeness, provided that the funding request relied entirely upon an erroneous depiction of tradition and custom, which is unknown.

. Each affiant asserts that he or she is “a traditional person, who lives by traditions and customs that were reserved to us through the centuries.'' Afffs). of Representative(s) Deco-rah, Garvin & Greengrass at 1-2.

. The Court has never sanctioned the oft-presented constitutional interpretation that the Legislature maintains authority to review, scrutinize and possibly reverse Executive Branch decisions merely on the basis that it budgeted a source of funds, which the Legislature is compelled to do. See Clarence Pettibone v. HCN Legislature et al., CV 01-84 (HCN Tr. Ct„ May 15, 2002) at 14 n. 3; see also Const., Art. V, § 13. While the Legislature holds the power "(tjo authorize expenditures by law and appropriate funds ... in an annual budget,” the Court is unaware of whether the Legislature has delegated this power to the President, i.e., has the President received legislative authorization to enact statutes regarding funding expenditures? The Constitution does riot contain any check signing provisions, and Legislator Lawrence L. Walker, Jr. also acknowledged that “the Nation does not have standing operating procedures on the authority and the procedures of what Legislators can and can not do regarding the signing of checks.” Aff. of Representative Lawrence Walker, CV 08-36 (Dec. 30, 2008) at 1. However, the Ho-Chunk Nation General Council has clearly “authorizejdl the executive branch to ... administer funds.” Const., Art. IV, § 2; see also Parmenton Decorah v. HCN Legislature et al., CV 99-08 (HCN Tr. Ct. July 1, 1999) at 10.

. In this case, the defendants directly challenge the authority of the President, and the Court cannot ascertain why he selects not to join the litigation. Mot. Hr'g (LPER, 08:54:37 CST). Attorney General Sheila D. Corbine has already acknowledged in a December 23, 2008 correspondence that "the core set of facts and actions in this ease touch on separation of powers issues ..., derivfing] directly from competing actions taken by [the] Executive Branch and the Legislative Branch."

. The Court earlier questioned the absence of the Ho-Chunk Nation Department of Justice since it is charged with providing legal counsel for both tribal entities and officials. Order (Regarding Disc.) at 2 n. 2; see also DOJ Establishment & One, Act of 2001, 1 HCC § 8.4a-c. The DOJ has previously facilitated the appointment of outside counsel when confronted with a conflict of interest, and this may have been the better practice in this instance. The Court questions the authority of Legislative Counsel to assert immunity on behalf of a member of the Judiciary when not under an obligation to ”[p]rovide . .. competent representation for ail Branches of the Nation.” Id., § 8.4b.

. These rationales have also appeared in federal case law regarding Indian tribes. See, e.g.. Cook v. AVI Casino Enters., Inc., 548 F.3d 718, 726-27 (9th Cir.2008).

. The federal courts acknowledge the presence of several forms of official absolute immunity. See Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (uppercchelon Executive Branch immunity); Nixon v. Fitzgerald, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (presidential immunity); Imbler v. Packman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (prosecu-torial immunity); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (judicial immunity).

. The Court shall likewise refrain from determining whether Traditional Court member Thompson enjoys absolute judicial immunity from offering deposition testimony. Not only has the Court never recognized this defense, the Traditional Court acted in an advisory capacity on April 21, 2008, and not in connection with a pending case or controversy.

. In certain instances, the Court has adopted common law defenses to equitable claims since the Constitution confers "original jurisdiction over .. . cases and controversies .. . in equity” upon the Judiciary. Const., Art, VII. § 5(a). For example, in 1997, the Court adopted the common law doctrine of laches. Steve B. Funmaker v. Jo Ann Jones et al., 1 Am. Tribal Law 223, 1997 WL 34671359 (HCN Tr. Ct. 1997) at 14; see also HCN Gaming Comm'n v. Wallace Johnson, 1 Am. Tribal Law 249, 1998 WL 35264264 (HCN S.Ct. 1998) (accepting the Court's adoption of the doctrine of laches). These cases, however, preceded the Judicial Branch's seminal decision regarding the constitutional scope of its subject matter jurisdiction. Ho-Chunk Nation v. Harry Steindorf et al., CV 99-82 (HCN Tr. Ct., Feb. 11, 2000), aff'd, SU 00-04 (HCN S.Ct., Sept. 29, 2000).

. The defendants did not express any philosophical qualms about seeking to compel Executive Branch employees to submit discovery responses even though such individuals would have similarly possessed sovereign immunity under the defendants' argument. Defs [sic ] Mot. to Compelí [sic ] Disc, from Jeriah Rave, Anne Thundercloud, Lisa Flick, & Caralee Murphy, CV 08-36 (Dec. 30, 2008).

. Federal courts have permitted a direct claim for money damages against an official under limited circumstances. An official would raise a defense of qualified or “good faith” immunity to defeat such a cause of action, and a court would need to assess whether the official’s actions violated a "clearly established” legal duty. See Harlow, 457 U.S at 818-19, 102 S.Ct. 2727. The Constitution appears to foreclose this type of claim, but, in any event, the plaintiff does not present a claim for individual liability. "[Qlualified immunity only immunizes defendants from monetary damages.” Williams v. Kentucky, 24 F.3d 1526, 1541 (6th Cir.1994); see also Rivera-Ruiz v. Gonzalez-Rivera, 983 F.2d 332, 335 (1st Cir.1993).